United States Court of Appeals
Fifth Circuit

**F I L E D**

April 12, 2007

Charles R. Fulbruge III
Clerk

**In the United States Court of Appeals
for the Fifth Circuit**



No. 04-61102

---

JOSEPH FERRER,
    Plaintiff–Appellant,
v.

CHEVRON CORPORATION,
    Defendant–Appellee.

---

KENNETH L. GREEN,
    Plaintiff–Appellant,
v.

CHEVRON CORPORATION,
    Defendant–Appellee.

---

CLAUDIA JOINER,
    Plaintiff–Appellant,
v.

CHEVRON CORPORATION,
    Defendant–Appellee.

---

MARGARET STANTON,
    Plaintiff–Appellant,
v.

CHEVRON CORPORATION,
    Defendant–Appellee.

---

JERRY A. SCOTT, SR.,
    Plaintiff–Appellant,

v.

CHEVRON CORPORATION,
    Defendant–Appellee.

---

PHYLLIS SMALL,
    Plaintiff–Appellant,

v.

CHEVRON CORPORATION,
    Defendant–Appellee.

---

EDWARD J. MURRAY III,
    Plaintiff–Appellant,

v.

CHEVRON CORPORATION,
    Defendant–Appellee.

---

TRULA S. DIXON,
    Plaintiff–Appellant,

v.

CHEVRON CORPORATION,
    Defendant–Appellee.

---

HUBERT N. COPELAND,
    Plaintiff–Appellant,

v.

CHEVRON CORPORATION,
    Defendant–Appellee.

---

GERALD D. HOAG,
    Plaintiff–Appellant,

v.

CHEVRON CORPORATION,
    Defendant–Appellee.

---

CHESTER R. SCOTT,
    Plaintiff–Appellant,

v.

CHEVRON CORPORATION,
    Defendant–Appellee.

---

Appeals from the United States District Court
for the Southern District of Mississippi

---

Before GARWOOD, BENAVIDES, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

The plaintiffs[1] in these eleven consolidated cases sued their former employer, Chevron Corporation, claiming Chevron breached its fiduciary obligations under the Employee Retirement Income Security Act (ERISA),[2] by misrepresenting the eligibility requirements for obtaining enhanced benefits under Chevron's retirement plan. The district court dismissed the ERISA claims pursuant to FED. R. CIV. P. 12(b)(6). We affirm because

---

[1] Joseph Ferrer, Kenneth L. Green, Claudia Joiner, Margaret Stanton, Jerry A. Scott, Sr., Phyllis Small, Edward J. Murray III, Trula S. Dixon, Hubert N. Copeland, Gerald D. Hoag, and Chester R. Scott.

[2] 29 U.S.C. §§ 1001-1462 (2000 & Supps. 1-4).

the plaintiffs have failed to allege a causal connection between Chevron's alleged misrepresentations and the plaintiffs' entitlement to receive enhanced retirement benefits.

I

Twenty-six former employees sued Chevron raising substantially identical claims, and those cases were consolidated in the district court for discovery and pre-trial proceedings. Eleven of those cases have been consolidated in this appeal.[3] Our recitation of the facts is based primarily on the allegations contained in the lead plaintiff's (Joseph Ferrer's) Amended Complaint and documents that were attached to his original Complaint and later incorporated by reference into his Amended Complaint.[4] The contentions of the other plaintiffs are similar in all material respects.

Each of the plaintiffs retired from Chevron in either 1999 or 2000 after working for a number of years at Chevron's refinery in Pascagoula, Mississippi. They participated in the "Chevron Corporation Retirement Plan," which is governed by ERISA. In connection with a planned workforce reduction, Chevron amended the retirement plan in 1999 to include the "Special Involuntary Termination Enhancement" plan (the SITE plan), which provided enhanced retirement benefits for qualifying individuals who were notified between March 1, 1999 and December 31, 1999 (the eligibility period) that their employment with Chevron would be involuntarily terminated without cause. Chevron informed its employees that they

---

[3]Not all plaintiffs perfected appeals, and some plaintiffs voluntarily dismissed their appeals.

[4]*See* FED. R. CIV. P. 10(c) ("Statements in a pleading may be adopted by reference in . . . another pleading . . . .").

4

could request termination if they were employed in a job group subject to the workforce reduction plan but that an employee's preference regarding termination was not binding on Chevron.[5]

The plaintiffs claim that they were told, both orally and in writing, that only "surplus" employees—employees who would not be replaced because their positions were to be eliminated entirely—would be eligible to receive SITE benefits. The plaintiffs were also told that only Pascagoula refinery employees in Group 1, human resources, and finance were subject to termination during the eligibility period and thus qualified to participate in the SITE plan. The plaintiffs did not work in any of these job groups, and they each allege that they were informed by various individuals that no one in their particular job groups would be involuntarily terminated without cause during the eligibility period because there were no surplus employees in those groups. Based on these representations, each of the plaintiffs

---

[5] Documents attached to the Amended Complaint reflect Chevron told its employees:

> If you work in an organization that has or develops a surplus of employees this year, local management will notify you whether your employment will be involuntarily terminated. Even though only involuntarily terminated employees are eligible for the SITE program, if you are in a group with a surplus of employees your management may ask if you are interested in terminating your employment. Your management will take your interest into consideration, but that is not a guarantee that you will be eligible for the SITE program.

Also attached was an e-mail to employees at the Pascagoula refinery reconfirming this:

> Chevron has no obligation to involuntarily terminate anyone who indicates a preference to be involuntarily terminated and Chevron in its sole discretion will decide which employees to terminate and the extent to which such input will be used.

Emphasis omitted.

decided to retire voluntarily, concluding that they would have no opportunity to receive the enhanced benefits if they remained in Chevron's employ.

The plaintiffs claim that they later learned that some terminated employees received SITE benefits even though their job positions were not eliminated and "the plan functioned as an enhanced retirement plan for senior management as opposed to a cost saving measure." The plaintiffs individually sued Chevron under ERISA §§ 1109(a) and 1132(a)(3), alleging actual and constructive fraud in administration of the SITE plan.[6]

The district court consolidated the cases for discovery and pre-trial management, designating Joseph Ferrer's case as the lead case. The court subsequently granted Chevron's motion for partial dismissal of Ferrer's case, holding that Ferrer failed to plead with particularity his breach of fiduciary duty claim, which was based on Chevron's alleged misrepresentations.[7]

In amended complaints, the plaintiffs more specifically asserted that Chevron breached its duty as an ERISA-plan fiduciary by misrepresenting the eligibility requirements for SITE benefits in several oral and written communications. Although the plaintiffs did not allege that anyone in their job groups was involuntarily terminated without cause or "allowed to participate" in the SITE plan, they maintained that Chevron's misrepresentations caused them to retire voluntarily. They alleged that Chevron has refused to allow them to

---

[6] 29 U.S.C. §§ 1109 & 1132; *see also id.* § 1104 (outlining an ERISA fiduciary's obligations).

[7] FED. R. CIV. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").

participate in the SITE plan, and they sought "equitable civil relief," citing 29 U.S.C. §1132(a)(3), but demanded "all benefits due and owing under the plan."[8]

After Ferrer's case had been pending for eighteen months, Chevron moved to dismiss all of the lawsuits under FED. R. CIV. P. 12(b)(6). Among other contentions, Chevron argued that the plaintiffs could not state a claim for breach of fiduciary duty because the decision regarding which employees would be terminated was discretionary and that this court held in *Bodine v. Employers Casualty Co.* that an employer's discretionary decision whether to terminate an individual's employment does not give rise to any ERISA fiduciary obligations even if the decision affects a plan participant's eligibility for enhanced retirement benefits.[9] Chevron further averred that the plaintiffs could not prevail on a breach of fiduciary duty claim because the alleged misrepresentations did not cause their damages. The district court granted the motions to dismiss the plaintiffs' lawsuits.

## II

We review the district court's 12(b)(6) dismissals *de novo*.[10] We construe the plaintiffs' complaints in the light most favorable to them, accepting all well-pleaded facts as

---

[8] Because of our disposition of this case, we do not consider what relief, if any, was available to the plaintiffs under subsection (3) of 29 U.S.C. § 1132(a), as distinguished from a claim for benefits under subsection (1). *See generally Varity Corp. v. Howe*, 516 U.S. 489, 507-16 (1996).

[9] 352 F.3d 245, 252 (5th Cir. 2003).

[10] *Muhammad v. Dallas County Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 379 (5th Cir. 2007).

7

true,[11] but "[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."[12] A written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding.[13] A claim cannot be dismissed under rule 12(b)(6) unless the plaintiffs "'would not be entitled to relief under any set of facts or any possible theory that [they] could prove consistent with the allegations in the complaint.'"[14] The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims.[15] We may affirm a district court's dismissal based on rule 12(b)(6) on any basis supported by the record.[16]

The plaintiffs rely on ERISA § 1109(a), which provides,

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial

---

[11]*Id.*

[12]*Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[13]FED. R. CIV. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *cf. Kane Enters. v. McGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[T]he court may review the documents attached to the motion to dismiss . . . where the complaint refers to the documents and they are central to the claim.").

[14]*Muhammad*, 479 F.3d at 380.

[15]*Id.* at 379.

[16]*R2 Inv. LDG v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).

> relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.[17]

Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting [plan management] . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."[18] In this case, Chevron was the ERISA plan administrator.

The plaintiffs contend that Chevron breached its fiduciary duties as the plan administrator in making the alleged misrepresentations, citing the Ninth Circuit's decision in *Mathews v. Chevron Corp.*,[19] which in turn relied on the Supreme Court's decision in *Varity Corp. v. Howe*.[20] We need not resolve whether Chevron was administering the plan when it took each of the actions alleged because even if the plaintiffs were able to prove all the allegations in their respective Amended Complaints, they have not stated a cause of action. The Amended Complaints and the briefing on appeal studiously avoid alleging that had the plaintiffs decided not to retire voluntarily, Chevron would have involuntarily terminated their employment, and they would have been eligible for SITE plan benefits. The plaintiffs' alleged loss of benefits did not "result[] from" any of the misrepresentations that

---

[17] 29 U.S.C. § 1109(a) (Supp. 3 2004).

[18] *Id.* § 1002(21)(A).

[19] 362 F.3d 1172, 1178-79 (9th Cir. 2004) (concluding that Chevron was acting as an ERISA-plan fiduciary in disseminating specific information about the SITE plan to its employees).

[20] 516 U.S. 489 (1996).

the plaintiffs contend Chevron made.[21]

Although the plaintiffs allege that "as of the effective date of Plaintiff's retirement, Chevron had decided to offer [SITE plan] benefits to similarly situated employees or was seriously considering making an offer," the more particularized allegations aver only that employees in groups other than Group 1 were allowed to participate.[22] No plaintiff has alleged that any employee in his or her group was eligible to receive or actually received SITE benefits.

Similarly, in their briefing in this court, the plaintiffs contend that "the misrepresentations made by the employers could have influenced the [plaintiffs'] decisions regarding voluntary retirement and whether to apply for the enhanced benefits provided to some employees," that Chevron's "misrepresentations certainly could have encouraged the [plaintiffs] to, in effect, take themselves out of consideration for involuntary dismissal and enhanced benefits without having all of the facts necessary to make a reasonably informed decision to do so," and that Chevron's "misrepresentations were material in that they took options out of consideration, or off the table, for these [plaintiffs]." What the plaintiffs have

---

[21]*See Willett v. Blue Cross & Blue Shield of Ala.*, 953 F.2d 1335, 1343 (11th Cir. 1992) ("Section 409 of ERISA [28 U.S.C. § 1109] establishes that an action exists to recover losses that 'resulted' from the breach of fiduciary duty; thus, the statute does require that the breach of the fiduciary duty be the proximate cause of the losses claimed . . . ."); *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982) (requiring a causal connection between the breach of fiduciary duty and the alleged losses in a § 1109 action, based on the "resulting from" language in the statute).

[22]For example, Ferrer's Amended Complaint alleges, "More specifically, . . . employees in other groups were allowed to participate."

avoided alleging and what they do not contend in this court is that if Chevron had not made the misrepresentations and plaintiffs had not retired, Chevron would have involuntarily terminated their employment.

The plaintiffs' complaint is that they lost the *chance* to request involuntary termination when they voluntarily retired. Even if "lost chance of involuntary termination" is actionable under ERISA (*Bodine* notwithstanding), the allegations in the plaintiffs' complaints are missing the necessary causal link between the misrepresentations and the plaintiffs' eligibility for SITE plan benefits. This is a critical distinction between this case and *Mathews v. Chevron*,[23] a similar case from the Ninth Circuit on which the plaintiffs rely to support their claims.

In *Mathews*, the Ninth Circuit held that Chevron breached a fiduciary duty to a group of similarly situated Chevron employees by communicating material misrepresentations about their eligibility to receive SITE plan benefits.[24] However, in that case Chevron had stipulated that everyone in the plaintiffs' work group would have received SITE benefits, including the plaintiffs, if they had not retired.[25] There is no such stipulation in this case. The misrepresentations alleged in the amended complaints may have caused the plaintiffs to voluntarily retire, or at least contributed to their decisions to do so, but the plaintiffs have not

---

[23] 362 F.3d 1172 (9th Cir. 2004).

[24] *Id.* at 1182.

[25] *Id.* at 1177, 1186.

11

alleged Chevron would have involuntarily terminated their employment had they not voluntarily retired.

The amended complaints additionally asserted that Chevron discriminated against the plaintiffs and failed to administer the plan "in accordance with a uniform and nondiscriminatory policy." The plaintiffs have not pursued these contentions on appeal.

In sum, the plaintiffs have failed to state a claim for relief under ERISA.

### III

The plaintiffs also complain that they were entitled to conduct discovery before the district court dismissed their claims, but the plaintiffs never (1) raised this argument below, (2) made any discovery requests even though they had ample time to do so, or (3) requested a continuance to conduct discovery. Moreover, a 12(b)(6) inquiry focuses on the allegations in the pleadings, not whether a plaintiff actually has sufficient evidence to succeed on the merits.[26] Although the plaintiffs argue that discovery might permit them to bolster their claims in some manner, notably, they do not so much as hint, let alone argue, that they might learn through discovery that other employees in their job groups were involuntarily terminated or otherwise were permitted to receive SITE plan benefits. The plaintiffs' argument therefore lacks merit.

\*\*\*\*

---

[26] See Muhammad v. Dallas County Cmty. Supervision & Corr. Dep't, 479 F.3d 377, 379 (5th Cir. 2007).

For the foregoing reasons, the district court's judgment is AFFIRMED.